**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**FREDERICK WAYNE MEARS**                                                              **PLAINTIFF**

**v.**                                            **No. 4:13–CV–556-KGB–BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                               **DEFENDANT**

## Instructions for Recommended Disposition

The following recommended disposition will be sent to U.S. District Judge

Kristine G. Baker.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Baker may

adopt the recommended disposition without independently reviewing all of the record

evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Frederick Wayne Mears seeks judicial review of the denial of his second application for disability insurance benefits and supplemental security income.[3]  In the past, Mr. Mears's jobs involved manual labor.[4]  His last job was welding.[5]  According to Mr. Mears, he stopped working at age 27 due to back pain.[6]  He did not look for other work.  Instead, he applied for disability benefits.

The Commissioner's ALJ denied Mr. Mears's first application on November 9, 2009; this court affirmed the ALJ's decision on June 19, 2012.[7]  In the interim, Mr. Mears applied a second time.  This case considers the second application.

Mr. Mears bases disability on his back pain, diabetes, breathing problems, and low oxygen levels in his blood.[8]  Because the denial of the first application foreclosed

---

[3]SSA record at pp. 127 & 131.

[4]*Id*. at p. 164.

[5]*Id*. at p. 158.

[6]*Id*. at pp. 42 & 157.

[7]Cause no. 4:11cv311-JTK.

[8]SSA record at p. 157.

benefits before November 9, 2009,[9] this case considers whether Mr. Mears was disabled

beginning November 10, 2009.[10]

**The Commissioner's second decision**.  After considering the second application,

the Commissioner's ALJ determined that Mr. Mears had severe impairments —

disorder of the back, diabetes mellitus, and asthma[11] — but he also found he could do

some sedentary work.[12]  Because a vocational expert identified available work,[13] the ALJ

determined Mr. Mears was not disabled and denied the application.[14]

After the Commissioner's Appeals Council denied a request for review,[15] the

second decision became a final decision for judicial review.[16]  Mr. Mears filed this case to

---

[9]*Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand.").

[10]The ALJ erroneously considered the time period beginning with the alleged onset date — June 6, 2008 — but that error has no bearing on the result.

[11]SSA record at p. 24.

[12]*Id*. at p. 25.

[13]*Id*. at p. 62.

[14]*Id*. at p. 30.

[15]*Id*. at p. 1.

[16]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal

challenge the decision.[17]  In reviewing the decision, the court must determine whether

substantial evidence supports the decision and whether the ALJ made a legal error.[18]

This recommendation explains why substantial evidence supports the decision and why

the ALJ made no legal error.

**Mr. Mears's allegations**.  Mr. Mears challenges the ALJ's development of the

record; he argues that the ALJ should have ordered a consultative mental evaluation.

He also argues that the ALJ should have given his primary care physician's (PCP)

opinion controlling weight and that the ALJ should have asked his PCP why his

treatment notes did not support the opinion before rejecting the opinion.  Mr. Mears

challenges the evaluation of his credibility.  He says that the ALJ ignored medical

evidence detracting from the unfavorable decision — breathing problems, low blood

sugar, back pain, difficulty tolerating stress, and shoulder pain — in determining his

ability to work.  He says the hypothetical question should have included these matters.

---

procedure permits claimants to appeal only final decisions).

[17]Docket entry # 1.

[18]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

For these reasons, he maintains substantial evidence does not support the ALJ's decision.[19]

For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to support the decision that Mr. Mears could do some sedentary work. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[20] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[21]

In this case, the ALJ added limitations reducing sedentary work: (1) no climbing ladders, ropes, or scaffolds; (2) occasional climbing ramps/stairs, balancing, kneeling, stooping, crouching, or crawling; (3) no concentrated exposure to pulmonary irritants such as dust, odors, and gases; (4) work permitting the use of a cane to walk; and (5) no workplace hazards like heavy moving machinery and unprotected heights. For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to

---

[19]Docket entry # 17.

[20]20 C.F.R. §§ 404.1567(a) & 416.967(a).

[21]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work.*

show Mr. Mears can work within these parameters.  A reasonable mind would accept

the evidence as adequate because it establishes no serious functional limitation

preventing work within the defined limits.

**Evidence about back pain**.  Mr. Mears claims he stopped working at age 27 due

to back pain.  At that time, diagnostic imaging showed some degenerative changes that

support complaints of back pain, but not complaints of disabling pain.  The diagnostic

imaging remained essentially the same throughout the pendency of both applications.[22]

According to four specialists, the diagnostic imaging shows nothing requiring surgical

intervention.

In 2008, the first specialist — a UAMS neurosurgeon — reported that the imaging

"suggested no acute neurosurgical pathology."[23]  Mr. Mears obtained medical insurance

and sought other medical opinions.  In September 2011, a second specialist — a private

neurosurgeon — obtained updated diagnostic imaging,[24] and explained that the

---

[22]*Compare* SSA record at pp. 227-28 (June 11, 2008), *with id*. at pp. 384-85 (Sept. 9, 2011).

[23]*Id*. at p. 241 (imaging "showed small central disk protrusion on L4-L5 as well as a broad-based left paracentral disk protrusion along the L5-S1 nerve root, and there has been no focal neural compression or spinal stenosis present.…MRI findings were not suggestive of any acute neurosurgical pathology…"; he should continue with physical therapy and steroid injections, and lose weight).

[24]*Id*. at p. 321 (recommended MRI of mid and low back; based on this, will discuss treatment options).

6

imaging showed nothing requiring a neurological procedure.[25]  Mr. Mears sought a

third opinion from an orthopedic surgeon.  Like the  neurosurgeons, the orthopedic

surgeon determined that Mr. Mears required no surgical treatment.[26]  Mr. Mears sought

a fourth opinion.

      The fourth specialist — a neurosurgeon — also recommended non-surgical

treatment.[27]  The fourth specialist warned that surgery was "unlikely to completely

eliminate his symptoms."[28]  After Mr. Mears complained about the failure of non-

surgical treatment to resolve his pain, the fourth specialist agreed to endoscopic

surgery.[29]

      After surgery, Mr. Mears testified that he had more back pain than before his

surgery, but conceded that it had only been two weeks since his surgery.  His surgeon

said it could take six months to a year to completely heal.[30]  When asked about

---

[25]*Id*. at p. 319 ("The lumbar study shows bulging discs at L4-5 and L5-S1.  Both of these are slightly more to the left, but without significant compression.  His pain is actually worse on the right."

[26]*Id*. at p. 331 ("He does not appear to require surgical management.").

[27]*Id*. at p. 348.

[28]*Id*. at p. 349.

[29]*Id*. at p. 354 ("I have given the patient the option of undergoing radiofrequency and repeating lumbar facet blocks.…The other option would be for him to undergo lumbar decompression at L4-5 and possibly at L5-S1) & p. 356 (operative report).

[30]*Id*. at pp. 44-45.

restrictions, Mr. Mears said his surgeon told him not to lift anything heavier than a gallon of milk and to avoid bending and stooping.[31]

This evidence supports complaints of back pain, but not pain so severe as to prevent Mr. Mears from working within the defined limits.  Higher exertional levels necessarily require the use of the back for lifting, carrying, walking, and standing, but sedentary work requires sitting.  It doesn't require lifting things heavier than a gallon of milk; it doesn't require postural movements that might aggravate back pain.  It requires only occasional walking or standing; Mr. Mears had to walk or stand at least occasionally to do the tasks needed to care for his five young children while his wife worked.  No medical evidence establishes limitations with the hands or fingers preventing sedentary work.  Although Mr. Mears complains about right shoulder pain, he had a full range of motion without pain or rotator cuff weakness.[32]  A reasonable mind would accept the evidence as adequate to show that Mr. Mears could do sedentary work despite back surgery, because four specialists determined the imaging indicated no need for back surgery.

---

[31]*Id*. at p. 45.

[32]*Id*. at p. 388.

8

**Asthma**.  Mr. Mears bases his claim, in part, on breathing problems.  His PCP

included a "history" of asthma as a diagnosis.[33]  Asthma can cause the airways to

periodically spasm and swell so that the airways narrow, causing a person to wheeze or

gasp for air.[34]  Although smoking "can irritate the airways and trigger an asthmatic

attack,"[35] Mr. Mears continues to smoke, against medical advice.[36]  He engages in

behavior that leads to his symptoms.  Continuing to smoke, while complaining about

shortness of breath, weighs against his credibility.  A reasonable mind would accept the

evidence about asthma as adequate to show he could work within the defined limits

because the ALJ eliminated work environments with pulmonary irritants that could

make it harder to breathe.

**Diabetes**.  Mr. Mears's PCP diagnosed diabetes in February 2010.[37]  Mr. Mears

was uninsured at that time, but he responded to medication samples.  Once he obtained

medical insurance, regular medication controlled his diabetes.[38]  "An impairment which

---

[33]*Id*. at p. 282.

[34]David A. Cramer & Tish Davidson, 1 The Gale Encyclopedia of Med. 502
(4th ed.)

[35]*Id*. at p. 504.

[36]SSA record at p. 282 ("stop smoking") & p. 365 ("needs to stop smoking").

[37]*Id*. at p. 287.

[38]*Id*. at pp. 279 & 370.

can be controlled by … medication is not considered disabling."[39]   A reasonable mind

would accept the evidence about diabetes as adequate to show Mr. Mears could do

sedentary work.  To the extent diabetes causes fatigue, the reduction to sedentary work

accommodates fatigue.

**Mental impairment**.  In hindsight, Mr. Mears argues that the ALJ should have

ordered a consultative mental evaluation, but Mr. Mears does not base his claim on

mental impairment.  His PCP prescribed an anti-depressant from time to time, but

Mr. Mears sought no mental health treatment.  There was no reason for a consultative

mental evaluation because the evidence implicated no significant mental impairment.[40]

**Opinion evidence**.  Agency medical experts reviewed the record evidence and

determined that Mr. Mears could do sedentary work with postural and environmental

---

[39]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[40]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairment(s)." ); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) ("The mere fact that [the claimant] has been prescribed antidepressants on at least one occasion is not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation."); *Matthews v. Bowen*, 879 F.2d 422, 424-25 (8th Cir. 1989) (ALJ did not err in evaluating claimant's psychological complaints without ordering a consultative exam; claimant never based disability on mental impairment; she only testified that she suffers from "nerves" and her doctor prescribed an anti-depressant medication; neither consultative physician noted any anxiety during their examinations).

limitations.[41]  The ALJ adopted those limitations.  The reduction to sedentary work

responds to Mr. Mears's weight and his back surgery; the postural limitations

accommodate complaints breathing problems.  A reasonable mind would accept the

agency opinion evidence as adequate to support the determination that Mr. Mears

could work within the defined limits.

The ALJ properly rejected the PCP's opinion[42] about Mr. Mears's ability to work

because treatment notes do not support the limitations reported in the opinion.[43]  No

reason existed for contacting the PCP because the record included detailed treatment

notes from specialists discussing the back condition forming the basis for the PCP's

opinion.[44]  In addition, the PCP rendered the opinion before Mr. Mears's back surgery.

The PCP reported that Mr. Mears's back condition was not likely to improve due to

nerve impingement, even though diagnostic imaging showed no significant nerve

---

[41]SSA record at pp. 300-04 & 330.

[42]*Id*. at p. 273.  *See also* p. 279.

[43]*Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (ALJ may disregard treating physician's opinion if he renders inconsistent opinions that undermine credibility of discounted opinion).

[44]*Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) ("An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped."); *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

impingement.  To the extent nerve compression caused back pain, surgery decompressed the source of pain.

**Vocational evidence**.  After determining Mr. Mears's ability to work, the ALJ asked a vocational expert about available work for a person with Mr. Mears's limitations.[45]  The vocational expert identified representative sedentary work.[46]  Although Mr. Mears maintains that the ALJ did not include all of his limitations in questioning the vocational expert, the ALJ captured the concrete consequences of Mr. Mears's impairments.[47]  The vocational expert's answers show work existed that Mr. Mears could do, regardless of whether such work existed where he lived, whether a job vacancy existed, or whether he would be hired if he applied for work.[48]  Because such work existed, Mr. Mears was not disabled under social security disability law.

**Conclusion and recommendation**.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate

---

[45]SSA record at p. 62.

[46]*Id.* (identifying clerical workers like charge account clerk, addressing clerk, and telephone quotation clerk as representative jobs).

[47]*Lacroix v. Barnhart*, 465 F.3d 881, 889-90 (8th Cir. 2006) (hypothetical question must capture concrete consequences of claimant's impairments).

[48]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).

judge recommends DENYING Mr. Mears's request for relief (docket entry # 2) and

AFFIRMING the Commissioner's decision.

DATED this 1st day of May, 2014.

UNITED STATES MAGISTRATE JUDGE